UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JOHN R. ATCHLEY, a married man,
and MICHAEL R. GILROY, a married
man,

              Plaintiffs,

      v.

PEPPERIDGE FARM, INC., a
Connecticut Corporation,

              Defendant.

No. CV-04-0452-FVS

ORDER GRANTING SUMMARY
JUDGMENT IN PART

**THIS MATTER** comes before the Court on the Defendant's Refiled Motion For Summary Judgment on Counterclaim, Ct. Rec. 354, and the Defendant's Motion to Dismiss Plaintiffs' Negligent Misrepresentation Actions, Ct. Rec. 361. In addition, the Plaintiffs have moved to strike three declarations filed in support of the Motion for Summary Judgment on Counterclaim.

The Court concludes that it is not necessary to strike any of the declarations to which the Plaintiffs object. The Plaintiffs have not suffered any prejudice as a result of the Defendant's allegedly untimely disclosures and the declarant has adequate personal knowledge to authenticate the exhibits to her declaration. Nor does the best evidence rule prohibit the declarant from testifying to the existence, rather than the content, of an agreement.

The Court has previously dismissed all of the Plaintiffs' claims

ORDER GRANTING SUMMARY JUDGMENT IN PART- 1

except their cause for negligent misrepresentation.  The Plaintiffs have conceded that, in light of the parol evidence rule, the integration clauses of various documents preclude them from introducing evidence that the Defendant supplied false information relating to the purchase of the distributorships.  Such false information is a necessary element of a negligent misrepresentation claim.  The Plaintiffs' negligent misrepresentation claims will therefore be dismissed.

In view of this ruling, the only claim remaining in this action is the Defendant's counterclaim.  Having considered the evidentiary record, the Court finds that PFI acted as a guaranty for the loan that enabled Mr. Gilroy to purchase his distributorship.  PFI having repaid the loan, Mr. Gilroy is obligated to reimburse PFI for the deficiency following the sale of the collateral.  However, the Court can not rule that the sale of the collateral was commercially reasonable as required by Washington's Uniform Commercial Code.  The amount of the deficiency is therefore in dispute and the matter will proceed to trial to determine the amount of the deficiency.

**BACKGROUND**

This case is a consolidation of two actions brought separately by the Plaintiffs, John R. Atchley and Michael Gilroy, against Pepperidge Farm, Inc. ("PFI").  PFI is a producer of baked goods, which it sells in retail food stores throughout the United States.  PFI consigns its products to independent distributors who market and deliver it to retail outlets.

**The Distributor Loan Program Agreement**

On December 20, 2001, PFI entered into a Distributor Loan Program Agreement (the "DLPA") with Campbell Soup Company ("Campbell") and Banc of America Leasing & Capital, LLC ("BALC").  Declaration of Clare Bogle, January 10, 2008, Ct. Rec. 359 ("Bogle Decl.") Ex. C; Supplemental Declaration of Clare Bogle, January 30, 2008, Ct. Rec. 397 ("Supp. Decl.") Ex. A.  The DLPA provides that, when BALC has made an installment loan to a prospective PFI distributor for the purchase of distributorship rights, PFI will repurchase the installment loan from BALC in the event of default.  *Id.* at 2, 4.  The DLPA further provides that BALC's "commitment to make Transactions pursuant to this agreement shall expire at 2:00 p.m., EST on December 31, 2002, unless extended by the parties." *Id.* at 17 ¶ 13.  The parties subsequently amended the DLPA by entering into the First Amendment to the Distributor Loan Program Agreement ("the Amendment").  The Amendment provides, "In Section 13, the reference to 'December 31, 2002' is amended to read: 'December 31, 2003.'"

On an unspecified date, Campbell and BALC entered into a Guaranty of Corporation ("the Guaranty").  Bogle Decl. Ex. C at 13-16.  The Guaranty states that Campbell is the parent company of PFI.  *Id.* at 14.  The Guaranty further provides,

> Campbell hereby unconditionally guarantees the full payment and performance by Obligor [previously identified as PFI] under that certain Distributor Loan Program Agreement dated as of December 20, 2001, by and between Obligor and BALC . . . the obligation hereunder may be considered by BALC either as a guaranty or an agreement of surety.

*Id.*

ORDER GRANTING SUMMARY JUDGMENT IN PART- 3

**Sale of the Distributorships**[1]

In the spring of 2003, Michael Gilroy, saw an advertisement for a "business opportunity" with PFI in the local paper.  Deposition of Michael Gilroy, October 18, 2007 ("Gilroy Dep.") at 4.  Mr. Gilroy answered the advertisement by calling the number listed.  He spoke to the current owner of the distributorship, Mr. Spangler.  Thereafter Mr. Gilroy was referred to PFI representatives to discuss the sale of Mr. Spangler's distributorship.  *Id.*

In March of 2004, PFI advertised the sale of a second distributorship or route.  Affidavit of John R. Atchley, December 6, 2004, Ct. Rec. 6, ("Atchley Aff.") ¶ 1; Deposition of Chris A. Baker, June 7, 2007 Ex. 12.  John R. Atchley learned that this distributorship was available from Rick Allessio, PFI's Manager of Retail Operations in Spokane.  Deposition of John R. Atchley, February 23, 2005 ("Atchley Dep.") at 10-11.  He subsequently met with Mr. Allessio to discuss the purchase of the distributorship.

On February 10, 2003, Mr. Gilroy completed a PFI Candidate Information Sheet.  Johnson Decl. Ex. A at 13.  Mr. Atchley completed an identical Candidate Information Sheet on March 5, 2004.  Atchley Dep. Ex. 4.  In completing the Candidate Information Sheets, the Plaintiffs represented that "Neither [PFI], nor any of its respective employees or representatives makes any representations or guarantees

---

[1] There is a factual dispute concerning whether the business arrangements at issue in this case are properly termed "distributorships" or "routes."  The Court makes no finding in the present order concerning this dispute, it being unrelated to the pending motions.  The term "distributorship" is primarily employed as a matter of convenience.

ORDER GRANTING SUMMARY JUDGMENT IN PART- 4

with respect to the sales or other information contained therein."
*Id.*

On February 26, 2003, Mr. Gilroy signed a Route Sales Summary
Sheet.  Affidavit of Rick Allessio, March 4, 2005, Ct. Rec. 33
("Allessio Aff.") Ex. 2.  Mr. Atchley signed an identical Route Sales
Summary on March 19, 2004.  In signing their respective Route Sales
Summaries, the Plaintiffs represented,

> I, the undersigned, have made my own independent
> investigation and . . . I also represent that I have not
> relied on any representation made by Pepperidge Farm, or any
> of its representatives with respect hereto.

On May 5, 2003, Mr. Gilroy entered into a Consignment Agreement
with PFI.  Affidavit of Michael Gilroy, December 6, 2004 (Ct. Rec. 6
in CV-04-0453-FVS) Ex. A.  Mr. Atchley entered into an identical
Consignment Agreement on May 24, 2004.  Atchley Aff. Ex. A.  The
Consignment Agreements granted the Plaintiffs the "exclusive right to
distribute [PFI] Consigned Products to retail stores" within their
respective territories.  Woolsey Decl. ¶ 6, Ex. B.  Mr. Gilroy paid
$299,950 for his distributorship.  Gilroy Decl. ¶ 5.

The final paragraph of the Consignment Agreement states,

> ENTIRETY OF CONSIGNMENT AGREEMENT.  This Agreement
> represents the entire agreement between Bakery and
> Consignee, whether written or oral, regarding
> distribution of Consigned Products.  This Agreement may
> not be amended orally or by custom or conduct but only
> by a writing signed by both Bakery and Consignee.

*Id.* Ex. C. ¶ 16.  The Consignment Agreement further provides, "[PFI]
shall have a first lien on the Distributorship and all proceeds of the
Distributorship as for all indebtedness of [the Plaintiffs] to [PFI]
at any time outstanding."  *Id.* ¶ 16.

ORDER GRANTING SUMMARY JUDGMENT IN PART- 5

Also on May 5, Mr. Gilroy and PFI executed an agreement in the form of a letter ("the Letter Agreement").  Woolsey Decl. ¶ 11, Ex. C. The Letter Agreement provides,

> It is my understanding that as a condition of the Loan, the Bank has required Campbell Soup Company ("Campbell") which is Pepperidge's parent company, to guarantee the full and prompt payment of all my obligations and liabilities to the Bank and that . . . Pepperidge has arranged for and Campbell's has agreed to provide, such guaranty on the condition that I execute and deliver this letter agreement. It is my further understanding that under the terms of a Distributor Loan Program Agreement among Campbell, Pepperidge and the Bank . . . the Note, the Security Agreement, the Lien, and all relevant collateral may, under certain circumstances, be sold, assigned, or negotiated to Pepperidge.

*Id*. Ex. C.  The Letter Agreement further provides, "In the event that Pepperidge and/or Campbell is obligated by the Loan Agreement or the Guaranty to pay any money to the Bank, the Guarantor shall be subrogated to the rights of the bank, to the extent of all amounts so paid."  *Id*. ¶ 2.

**Mr. Gilroy's Financing Arrangement**

On February 26, 2003, Mr. Gilroy applied to BALC for a loan in the amount of $269,550.  Bogle Decl. Ex. B.  BALC eventually approved the loan and Mr. Gilroy executed a promissory note (the "Note") on May 1, 2003.  Bogle Decl. Ex. D.  Pursuant to the Note, Mr. Gilroy promised to repay the $269,550 to BALC, plus interest.  *Id*. at 1.  Mr. Gilroy also entered into a Financing Security Agreement (the "Security Agreement") with BALC.  Bogle Decl. Ex. E.  The Security Agreement provides,

> the Borrower [Mr. Gilroy] hereby grants, conveys, assigns and transfers to Secured Party a first priority security interest in and to . . . any and all rights that the Borrower may have or acquire under that certain Consignment

ORDER GRANTING SUMMARY JUDGMENT IN PART- 6

> Agreement dated May 5, 2003 ("Consignment Agreement")
> between Pepperidge Farm, Incorporated, and Borrower.

*Id*.  The Security Agreement further provides that any cancellation or termination of the Consignment Agreement would constitute default. *Id*. at 2.

**Repayment of Mr. Gilroy's loan**

The Plaintiffs' distributorships were eventually terminated.[2] The resale of Mr. Gilroy's distributorship is an issue in the motions presently before the Court; the resale of Mr. Atchley's distributorship is not.  Consequently, the remainder of this factual summary focuses on Mr. Gilroy's distributoship.

In January of 2005, PFI asked BALC to "provide loan payoff letters for [Mr. Gilroy] with a payoff date of February 7, 2005." Bogle Decl. Ex. G at 30.  BALC responded on January 28, indicating that the total amount due was $244,761.48.  *Id*.  BALC further stated, "Please forward the total due to my attention at the above address or you may wire transfer . . ." *Id*. at 2.  On February 3, 2005, PFI issued a check to BALC in the amount of $244,761.76.  The check was later deposited.  Bogle Decl. Ex. H.

**Resale of Mr. Gilroy's Distributorship**

PFI began trying to resell Mr. Gilroy's distributorship in January of 2005.  Woolsey Decl. ¶ 14.  From February 1, 2005 until the

---

[2]PFI contends that the Plaintiffs abandoned their distributorships.  The Plaintiffs contend that PFI terminated their distributorships.  It is not necessary to resolve this factual dispute in order to rule upon the motions presently pending before the Court.  The Court thus makes no findings with regard to this issue.  The phrase "terminated" is employed as a matter of convenience.

ORDER GRANTING SUMMARY JUDGMENT IN PART- 7

resale of the distributorship, PFI operated the distributorship on its own account as a "Company Route." Declaration of Michael Gilroy, August 1, 2007 ("Gilroy Dep.") ¶ 3. During this time period, the distributorship "became even more profitable" as the 52-week sales average increased from $8,238 to $8,886. Declaration of Rick Allessio, April 17, 2007, Ct. Rec. 231 ¶ 19(b).

From February 2005 until July 2006, Chris Baker, a director of retail operations for PFI, provided "marketing support" for the Spokane market. Declaration of Chris Alan Baker, September 6, 2007, Ct. Rec. 316 ("Baker Decl.") ¶ 6, Ex. CAB-1. During this time period, Mr. Baker held four open houses in Spokane. Each open house was advertized in the "Spokane Review." The advertisements for the two later open houses indicated that PFI had "routes available in the Spokane Market." Mr. Baker also ran radio advertisements on Seattle and Spokane stations. *Id*. Ex. 3-5. It does not appear that Mr. Gilroy's distributorship was specifically mentioned in any of the advertisements, which were "typical of the activities PFI engages in to facilitate sales of consigned product distributorships." *Id*. ¶ 11.

From mid-summer 2006 until the resale of Mr. Gilroy's distributorship, Michael Sorich, a Manager of Retail Operations for PFI, was involved in PFI's attempt to resell Mr. Gilroy's distributorship. Declaration of Michael Sorich, September 6, 2007, Ct. Rec. 318 ("Sorich Decl.") ¶ 2. Mr. Sorich placed signs advertizing the distributorship's availability on the sides of PFI's trucks, posted flyers in the back rooms of local grocery stores, and advertized an open house in the Spokesman-Review and the Pinch. Sorich Decl. ¶ 3. The open house was held on November 29, 2006, *Id.*,

ORDER GRANTING SUMMARY JUDGMENT IN PART- 8

but not a single prospective buyer attended.  Deposition of Michael Sorich, November 29, 2007, at 27.

PFI eventually sold Mr. Gilroy's distributorship in two portions for a total of $123,636.00.  Bogle Decl. ¶ 9, Ex. I.

**Procedural Background**

In November of 2004, Plaintiffs each filed separate actions in Spokane County Superior Court against the Defendant for recision of contract and damages for breach of contract, misrepresentation, and violation of Washington's Franchise Investment Protection Act ("FIPA").  PFI removed both actions to this Court.  The cases were set on the same briefing schedule and, eventually, consolidated.  The Plaintiffs' Amended Complaints state causes of action for breach of contract, violation of FIPA, violation of Washington's Business Opportunity Fraud Act ("BOFA") and "misrepresentation."  PFI counterclaimed to recover the deficiency allegedly owed by Mr. Gilroy under the Consignment and Letter Agreements.

The Plaintiffs initially moved for partial summary judgment and rescission of their contracts with PFI shortly after removal to this Court.  The Court denied the Plaintiffs' motion on May 20, 2005.  The Plaintiffs renewed their motion for partial summary judgment in 2006 and PFI filed a cross-motion for summary judgment on all claims.  The Court granted the Defendant's motion in part, dismissing the Plaintiffs' FIPA, BOFA, and breach of contract claims.

The Court also dismissed the Plaintiffs' "misrepresentation" claim to the extent that it was premised on the allegation that PFI promised the distributorships "would be profitable" and the allegation that PFI "promised it would not charge back for any stale products."

ORDER GRANTING SUMMARY JUDGMENT IN PART- 9

Order Re: Summary Judgment Motions, Ct. Rec. 157 ("Summary Judgment Order) at 19.  The Court also held, however, that the "Plaintiffs' allegation that PFI represented, at the time the Consignment Agreements were signed, that it had an unlimited stale policy . . . if proven, [was] sufficient to establish the requisite negligence for a claim for negligent misrepresentation." *Id.* at 20.

The Defendant now moves for summary judgment on both the Plaintiffs' remaining cause of action and its counterclaim.  In support of the motion for summary judgment on the counterclaim, the Defendant filed the declaration of Clare Bogle, a Certified Public Accountant employed by PFI.  Bogle Decl. ¶ 2.  Eight documents are attached to Ms. Bogle's declaration.  Ms. Bogle declares, "I have access to, or the ability to direct others' access to, these documents in my work capacity, generally." *Id.* ¶ 3.

On the day that they filed their response to the Defendant's motion for summary judgment, the Plaintiffs moved to strike the Bogle Declaration.  Among other arguments, the Plaintiffs contend that Ms. Bogle does not have the necessary personal knowledge to authenticate the documents attached to her declaration as Exhibit C.

In an attempt to address this argument, the Defendant filed a supplemental declaration from Ms. Bogle, Ct. Rec. 397, at the same time that it filed its summary judgment reply brief.  The Plaintiffs then moved to strike Ms. Bogle's Supplemental Declaration.  The Defendant filed a second supplemental declaration from Ms. Bogle. Consistent with the Plaintiffs' request, the Court considers the motions to strike prior to addressing the pending motions for summary judgment.

ORDER GRANTING SUMMARY JUDGMENT IN PART- 10

**DISCUSSION**

**I.   SUMMARY JUDGMENT STANDARD**

A moving party is entitled to summary judgment when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265, 273-74 (1986). The party moving for summary judgment bears the initial burden of identifying those portions of the record that demonstrate the absence of any issue of material fact. *T.W. Elec. Service, Inc. v. Pac. Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987). Only when this initial burden has been met does the burden of production shift to the nonmoving party. *Gill v. LDI*, 19 F. Supp. 2d 1188, 1192 (W.D. Wash. 1998). Inferences drawn from facts are to be viewed in the light most favorable to the non-moving party, but that party must do more than show that there is some "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986).

**II.  APPLICABLE LAW**

A federal district court sitting in diversity must apply the substantive law of the forum state. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 426-427, 116 S. Ct. 211, 2219, 135 L. Ed. 2d 659, 673 (1996); *Erickson v. Desert Palace, Inc.*, 942 F.2d 694, 695 (9th Cir 1991)(citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817 (1938). The Court will accordingly apply Washington law in adjudicating the parties' state law claims.

ORDER GRANTING SUMMARY JUDGMENT IN PART- 11

**III. MOTIONS TO STRIKE**

    **A.   Motion to Strike Bogle Declaration**

    **1.   Untimely disclosure**

    The Plaintiffs argue that Ms. Bogle's original declaration should be stricken because the Defendant did not disclose Ms. Bogle as a witness in a timely fashion.  It does not appear, however, that the Plaintiffs suffered any prejudice as a result of the allegedly untimely disclosure.  Rather, the Defendant offered to postpone the hearing on its motion for summary judgment and to make Ms. Bogle available for deposition.  Moreover, Ms. Bogle's declaration serves chiefly to authenticate the documents attached to it.  The untimely disclosure of Ms. Bogle's testimony thus does not provide a basis for striking her affidavit.

    **2.   Untimely disclosure of Exhibit A**

    Exhibit A to the Bogle Declaration consists of the loan application Mr. Gilroy submitted to BALC and a memorandum signifying Ms. Bogle's approval of the loan.  The Plaintiffs argue that Exhibit A was not disclosed during discovery.  It does not appear, however, that the Plaintiffs suffered any prejudice as a result of the allegedly untimely disclosure.  The Defendant indicates that page 1 of Exhibit A was, in fact, disclosed during discovery.  Page 2 merely serves to illustrate that Ms. Bogle has personal knowledge of Mr. Gilroy's transactions with PFI.

    **3.   Personal knowledge of Exhibit C**

    Exhibit C consists of the cover page of the DLPA as well as a "Guaranty of Corporation in effect between PFI and Bank of America at the time of Gilroy's loans."  Bogle Decl. ¶ 4, Ex. C at 1.  Although

ORDER GRANTING SUMMARY JUDGMENT IN PART- 12

the Defendant is listed as a party to the DLPA, there is not a
signature line for the Defendant on the last page of the Guaranty.
*Id.* at 4.

The Plaintiffs argue that Ms. Bogle does not have the personal
knowledge necessary to authenticate Exhibit C.  The Court disagrees.
The cover page of the DLPA states that PFI was a party to the
agreement.  It follows that Ms. Bogle can authenticate it as a
business record.  While the Guaranty is an agreement between Campbell
and Bank of America, the Guaranty establishes that Campbell is the
parent company of PFI.  Through the Guaranty, Campbell agrees to act
as a guarantor for certain obligations incurred by PFI.  As a Campbell
subsidiary, it makes sense that PFI would maintain such a record in
its ordinary course of business.  Ms. Bogle therefore has the personal
knowledge necessary to authenticate Exhibit C and it need not be
stricken.

### 4.  Hearsay

Under the Federal Rules of Evidence, hearsay is generally
inadmissible.  Fed. R. Evid. 802.  A document need not be excluded as
hearsay, however, when the testimony of the records custodian or
another qualified witness establishes:

> 1)  The document reports or records information
> gathered in the course of a regularly conducted business
> activity;
>
> 2) It was the regular practice of the business to make the
> record in question;
>
> 3) The record was made at or near the time of the business
> activity; AND
>
> 4) The record was made by a person with knowledge.

1   Michael H. Graham, Federal Practice And Procedure: Evidence § 7047

2   (2006).

3       The Bogle declaration establishes that Ms. Bogle was involved in

4   the preparation of the documents and has access to them in her

5   position at PFI.  The documents that comprise Exhibit C are therefore

6   admissible as business records.

7       **5.   Best evidence rule**

8       Under the Best Evidence Rule, a party seeking to introduce

9   evidence concerning the content of a writing or recording must

10  introduce the original writing or recording.  Fed. R. Evid. 1002.  The

11  Bogle Declaration states, "At the time Gilroy became a distributor of

12  PFI products, . . . PFI had in place a Distributor Loan Program

13  facility with Bank of America."  Bogle Decl. ¶ 2.  The Bogle

14  Declaration identifies Exhibit C as, "True copies of the face sheet of

15  the Distributor Loan Program Agreement and the Guaranty of Corporation

16  in effect between PFI and Bank of America at the time of Gilroy's

17  loan."  Bogle Decl. ¶ 4.

18      The Plaintiffs argue that the Bogle Declaration violates the Best

19  Evidence Rule by providing testimony about the missing portions of the

20  DLPA.  However, stating that an agreement existed is not the same

21  thing as describing the contents of the agreement.  Even if it were

22  necessary to introduce an original copy of the DLPA, Exhibit C

23  includes the face sheet of the DLPA.  The face sheet alone

24  demonstrates that the DLPA agreement existed.  *See* Bogle Decl. Ex. C.

25  The Best Evidence Rule thus does not provide a basis for striking the

26  Bogle declaration.

ORDER GRANTING SUMMARY JUDGMENT IN PART- 14

**B.    Motions to Strike the Supplemental Declarations**

As a general matter, the district court may permit a party to supplement an affidavit or declaration filed in support of or in opposition to a motion for summary judgment.  Fed. R. Civ. P. 56(e). While Rule 56 does not specifically address the propriety of evidence submitted for the first time with reply briefs, the Ninth Circuit has held that courts may consider such evidence as long as the non-moving party is given an opportunity to respond.  *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996).

Applying these principles, the Court concludes that it need not strike the supplemental declarations.  The Plaintiffs have taken advantage of their motions to strike to respond to the supplemental declarations.  They have therefore had the opportunity to respond to this evidence mandated by *Provenz.*

**IV.   MOTION TO DISMISS PLAINTIFFS' REMAINING CLAIMS**

**A.    Propriety of Motion**

The Plaintiffs argue that the Defendant's motion for summary judgment on their negligent misrepresentation claim is an improper refiling of the motion for summary judgment that was resolved in 2006. However, the Plaintiffs have cited no authority limiting the number of dispositive motions that may be filed in a civil case.  In fact, the Plaintiffs themselves have previously moved for summary judgment twice.  The present motion is also based upon a recent decision of the Washington Supreme Court.[3]  The Court accordingly finds consideration

---

[3]The Court does not reach this argument because the Defendant's argument concerning the effect of the integration clauses is dispositive.

ORDER GRANTING SUMMARY JUDGMENT IN PART- 15

of the present motion to be proper.

**B.   Claims Remaining in the Action**

The Court dismissed all of the Plaintiffs' claims except negligent misrepresentation in its prior summary judgment order.  To the extent that the Plaintiffs' complaints may have stated a claim for intentional misrepresentation, this claim is no longer viable.  Both the parties and the Court have been proceeding under the assumption that negligent misrepresentation is the only one of the Plaintiffs' claim remaining in this action.  As the Defendant has observed, the Plaintiffs' own briefing on an unrelated motion[4] refers to "the Plaintiffs' remaining claim and potential recovery against PFI for negligent misrepresentation."  (Ct. Rec. 192 at 3.)  Moreover, the discovery master's letter to the parties of November 9, 2006 indicates, "Both Counsel agreed that the [Court's] rulings . . . narrowed the claims of the plaintiffs to negligent misrepresentation." Reply Ex. B at 1.  Discovery was thus conducted under the assumption that the Plaintiffs' only remaining claim was a claim for negligent misrepresentation.  Given that discovery has been completed, it would be unfair to permit the Plaintiffs to pursue a claim for intentional misrepresentation.

**C.   Effect of Integration Clauses**

Under the principle referred to as "the parol evidence rule,"

---

[4]Following the Court's prior summary judgment ruling, the Plaintiffs appealed to the Ninth Circuit and moved this Court for an order clarifying its summary judgment ruling.  The Plaintiffs did not request expedited review of their motion to clarify, and the Ninth Circuit denied the appeal before this Court had an opportunity to rule on the motion for clarification.  The motion for clarification will accordingly be denied as moot.

extrinsic evidence is inadmissible to "add to, subtract from, modify, or contradict" the terms of a fully integrated contract. *Berg v. Hudesman*, 115 Wn.2d 657, 670, 801 P.2d 222, 230 (1990). Given that the purpose of a written contract is to memorialize an agreement, a fully integrated contract presumably includes all of the "promises, warranties, and undertakings" involved in the exchange. 6 Arthur Linton Corbin, Corbin On Contracts § 585 (Interim Ed. 2002). In the case of a partially integrated contract, parol evidence is admissible to prove terms that were agreed to by the parties but not integrated into the contract. *Emrich v. Connell*, 105 Wn.2d 551, 556, 716 P.2d 863, 866-867 (1986). However, such parol evidence is only admissible to the extent that it does not contradict the written terms of the contract. *Id.*

The Defendant argues that the Plaintiffs signed three documents that negate the existence of any prior understandings or agreements between PFI and the Plaintiffs. Specifically, the Candidate Information Sheet, the Route Sales Summary, and the Consignment Agreement itself represent that neither PFI nor its employees made any representations or guarantees concerning the distributorship. The Plaintiffs having failed to respond to this argument in their briefing, the Court has no choice but to consider the issue conceded.

The parole evidence rule will thus preclude the Plaintiffs from introducing evidence at trial that the Defendant supplied false information. They will consequently be unable to prove one of the elements of a negligent misrepresentation claim. The Plaintiffs having failed to demonstrate the existence of a genuine issue of material fact, the negligent misrepresentation claims must be

ORDER GRANTING SUMMARY JUDGMENT IN PART- 17

1  dismissed.

2  **V.    MOTION FOR SUMMARY JUDGMENT ON COUNTERCLAIM**

3     **A.    Is Mr. Gilroy Obligated to Reimburse PFI?**

4      The Court finds that Mr. Gilroy is obligated to reimburse PFI for
5  the deficiency, if any, owed under the Security Agreement.  When PFI
6  terminated Mr. Gilroy's distributorship, the Security Agreement went
7  into default.  The occurrence of default triggered PFI's obligation to
8  repurchase Mr. Gilroy's loan from BALC.  *See* DLPA at 4 ¶ 2.  Through
9  Exhibit G, BALC provided PFI with notice of the defaulted transaction.
10 PFI paid BALC the amount due on Mr. Gilroy's loan.  Bogle Decl. Ex. H.
11 PFI was thus obligated to pay BALC under the terms of the DLPA.
12 Letter Agreement ¶ 2.  After it paid BALC the amount owed, PFI became
13 subrogated to the rights of BALC and acquired a security interest in
14 Mr. Gilroy's distributorship.

15     Mr. Gilroy argues that PFI was not a party to the Guaranty.
16 While it is true that PFI is not a party to the Guaranty itself, PFI
17 is a party to both the Letter Agreement and the DLPA.  Pursuant to the
18 DLPA, PFI agreed to repurchase Mr. Gilroy's loan in the event of his
19 default.  Pursuant to the Letter Agreement, Mr. Gilroy agreed that PFI
20 would be subrogated to the rights of BALC if the DLPA required PFI to
21 pay BALC any money.  PFI thus guaranteed Mr. Gilroy's loan.

22     The Plaintiff further argues that he executed the Promissory Note
23 and the Security Agreement with Banc of America Leasing and Capital,
24 LLC, rather than "Bank of America."  While the parties' use of "Bank
25 of America" as shorthand for "Banc of America Leasing and Capital,
26 LLC" creates a potential for confusion, this nomenclature dispute does
   not alter the legal effect of the contracts.  As the Defendant points
ORDER GRANTING SUMMARY JUDGMENT IN PART- 18

out, all of the operative documents refer to BALC rather than "Bank of America."

In addition, Mr. Gilroy argues that Exhibit G to the Bogle Declaration constitutes neither a demand for payment nor a notice of default. The Court disagrees. The DLPA states that PFI will repurchase the loan from BALC "upon notification to the Company [previously defined as PFI] by the Lender." DLPA at 4 ¶ 2. Through the email that has been labeled "Exhibit G," BALC notified PFI of the amount due. This email also asks PFI to mail or wire payment for the outstanding debt to BALC. Exhibit G constitutes a demand that, by the terms of the DLPA, obligated PFI to repurchase Mr. Gilroy's loan.

Finally, the Plaintiff argues that the DLPA required BALC to sell its rights to the collateral to PFI after PFI had paid off the balance. While this is an accurate description of the terms of the DLPA, BALC did sell its rights in the collateral to PFI. PFI was obligated to repurchase the loan from BALC after Mr. Gilroy defaulted on the Security Agreement. PFI ascertained the balance due on the loan and paid BALC that amount with its check of February 3, 2005. It does not appear that any additional action was necessary to effect the sale. Mr. Gilroy is therefore obligated to reimburse PFI for the deficiency.

**IV. COMMERCIAL REASONABLENESS OF THE SALE**

A party who has taken a security interest in collateral may sell the collateral in the event of default. Wash. Code Rev. § 62A.9A-610(a). Every aspect of such a sale, "including the method, manner, time, place, and other terms, must be commercially

ORDER GRANTING SUMMARY JUDGMENT IN PART- 19

reasonable." Wash. Code Rev. § 62A.9A-610(b). If a sale is not conducted in a commercially reasonable manner, the liability of the debtor will be reduced. Wash. Code Rev. § 62A.9A-626(3).

### A. Burden of Proof

Prior to the enactment of Washington's current version of the Uniform Commercial Code ("UCC"), the creditor bore the burden of proving the commercial reasonableness of a sale. *Sec. State Bank v. Burk*, 100 Wn. App. 100, 101, 995 P.2d 1272, 1277 (internal citations omitted); *Rotta*, 47 Wn. App. at 24-25, 733 P.2d at 578. Washington's UCC now provides that, when the amount of a deficiency is in issue, there is a rebuttable presumption that the secured party has complied with the UCC's requirements. Wash. Rev. Code § 62A.9A-626(a)(1). If the debtor "places the secured party's compliance in issue," the burden of proving compliance shifts to the secured party. Wash. Rev. Code § 62A.9A-626(a)(2). The UCC comments indicate that, in order to place commercial reasonableness "in issue," the opposing party need only "raise the issue (in accordance with the forum's rules of pleading and practice)."

Here, Mr. Gilroy has placed PFI's compliance with the commercial reasonableness requirement in issue. While Washington caselaw does not specify what a debtor must do in order to place commercial reasonableness "in issue," the plain language of the statute, as well as the accompanying note, suggest that a debtor need do no more than argue that the sale was not commercially reasonable. As discussed more fully below, Mr. Gilroy has contested the commercial reasonableness of the sale. Consequently, PFI bears the burden of

ORDER GRANTING SUMMARY JUDGMENT IN PART- 20

proving that the sale of Mr. Gilroy's distributorship was commercially reasonable.

The Defendant argues that a debtor may only rebut the presumption of commercial reasonableness by introducing evidence that he or she was not provided with adequate notice of the sale.  This interpretation is at odds with both the plain language of the statute and the caselaw decided prior to the enactment of the current UCC. The Defendant has cited no authority, from Washington or elsewhere, suggesting that a debtor must introduce evidence in order to shift the burden of proving commercial reasonableness to the creditor.  Even if the submission of evidence were necessary, the Plaintiff has introduced the deposition of Mr. Dollbaum.

**B.    Commercial Reasonableness**

A sale is commercially reasonable if made,

> (1) In the usual manner on any recognized market;

> (2) At the price current in any recognized market at the time of the disposition; or

> (3) Otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition.

Wash. Rev. Code § 61A.9A-627(b).  In determining whether a sale was commercially reasonable, the Court should consider a number of factors:

> 1) Whether notice of the sale was provided "sufficiently in advance to allow interested bidders a reasonable opportunity to participate;"

> 2) Whether notice of the sale was provided to the segment of the public most likely to be interested;

> 3) Whether the notice contained enough information about the collateral to make an informed decision;

ORDER GRANTING SUMMARY JUDGMENT IN PART- 21

4) How widely the notice was published;

5) The relationship of the price obtained to the recognized market price;

6) "Conformity of the sale to commercially accepted standards;

7) The presence or absence of a recognized market; and

8) "The overall reasonableness of means and methods of disposition under the circumstances."

*Rotta v. Early Indust. Corp.*, 47 Wn. App. 21, 25, 733 P.2d 576, 578 (Wash. Ct. App. 1987).  The commercial reasonableness of a sale is a question of fact generally reserved for the trier of fact.  *Burk*, 100 Wn. App. at 101, 995 P.2d at 1277 (internal citations omitted).  It is only appropriate for the court to rule upon such questions as a matter of law in "the clearest of cases." *Id.* "Even where the evidentiary facts are undisputed, if reasonable minds could draw different conclusions from those facts, then summary judgment is not proper." *Id.* (citing *Chelan County Deputy Sheriffs' Ass'n v. County of Chelan*, 109 Wn.2d 282, 295, 745 P.2d 1 (1987)).

**1.   Price**

In evaluating the commercial reasonableness of a sale, the mere fact that a higher price could have been obtained if the sale had occurred at a different time or using a different method is not dispositive.  Wash. Rev. Code § 62A.9A-627(a).  However, "a low price suggests that a court should scrutinize carefully all aspects of a disposition to ensure that each aspect was commercially reasonable." Wash. Rev. Code § 62A.9A-627 Comment 2.

Here, Mr. Gilroy has demonstrated that the price for which the

ORDER GRANTING SUMMARY JUDGMENT IN PART- 22

distributorship was eventually sold is significantly lower than both the price paid by Mr. Gilroy and the distributorship's fair market value. Mr. Gilroy purchased the distributorship for $299,950 in 2003. At that time, the distributorship's 52 week sales average was $8,238. Allessio Decl. ¶ 19(b). PFI sold the distributorship for a total of $123,663 in 2006. At that time, the distributorship's 52 week sales average had risen to $8,886. *Id.* PFI thus sold the distributorship for considerably less than Mr. Gilroy paid for it in spite of the fact that the distributorship's sales had increased.

Mr. Gilroy has also demonstrated that PFI sold the distributorship for considerably less than its fair market value. Mr. Woolsey has testified that PFI determines the fair market value of a distributorship by multiplying "the average weekly net return wholesale of the distributorship" by a multiple. Deposition of Ron Woolsey, June 6, 2007, Ct. Rec. 304-5, at 79. The multiple consists of an average of the ratios of surrounding distributorships. *Id.* In the spring of 2004, the market ratio was 39:1, making the multiple 39. Deposition of Chris A. Baker, June 7, 2007, at 70. Multiplying this figure by the average weekly net wholesale of Mr. Gilroy's distributorship at the time PFI sold it, the fair market value of the distributorship was $346,554. (Ct. Rec. 385 at 43.)

Given the discrepancy between the price Mr. Gilroy paid, the fair market value of the distributorship, and the price for which it was eventually sold, the Court must evaluate the other aspects of the sale with heightened scrutiny.

ORDER GRANTING SUMMARY JUDGMENT IN PART- 23

### 2. Notice

Mr. Gilroy has raised a genuine issue of material fact concerning the adequacy of the notice of the sale. During the period that it was attempting to sell Mr. Gilroy's distributorship, PFI ran an average of seven print advertisements per year. Neither the fliers Mr. Sorich distributed nor the magnetic signs he installed on PFI's trucks generated any interest in the distributorship. Not a single individual attended the open house held in November of 2006, and PFI has provided no information containing the circulation of the Pinch. As the Plaintiff's counsel observed at oral argument, this is a questionable level of advertizing for an asset valued at over $300,000.

Moreover, Mr. Gilroy has introduced evidence that demonstrates that PFI was aware that its advertising efforts were inadequate. In the course of discovery, PFI's National Manager of Sales Training, Mark Dollbaum, sat for a deposition. In discussing PFI's efforts to sell distributorships, he observed,

> . . . you can see these advertisements are highly ineffective . . . and I keep reminding people of that continuously. I'm kind of running out of patience with wasting our money on these advertisements but we'll continue to do it because we want to support our distributors in any way we can and they feel strongly about it so we continue to run the advertisements on their behalf.

Deposition of Mark Dollbaum, November 30, 2007 at 30. Mr. Dollbaum not only admitted that PFI's advertizing practices were ineffective, he also indicated that PFI was on notice of this fact. Dollbaum Dep. at 30. Reliance on advertizing methods that are thought to be of questionable value does not constitute commercially reasonable notice

ORDER GRANTING SUMMARY JUDGMENT IN PART- 24

of a sale.  Mr. Gilroy has thus raised genuine issues of material fact concerning the adequacy of the notice of the sale.  Summary judgment on the issue of commercial reasonableness is therefore inappropriate.

The Court being fully advised,

**IT IS HEREBY ORDERED:**

1. The Plaintiff's Motion For Shortened Notice, **Ct. Rec. 392**, is **GRANTED.**

2. The Plaintiffs' Motion to Strike Declaration of Bogle, **Ct. Rec. 388**, is **DENIED.**

3. The Plaintiffs' Motion For Shortening Time For Notice on Motion to Strike Supplemental Declaration of Clare Bogle, **Ct. Rec. 407**, is **GRANTED.**

4. The Plaintiffs' Motion to Strike Supplemental Declaration of Clare Bogle, **Ct. Rec. 403**, is **DENIED.**

5. The Plaintiffs' Motion To Shorten Time For Notice on Motion to Strike Second Supplemental Declaration of Clare Bogle and Defendant's (Surrebuttal) Response, **Ct. Rec. 419**, is **GRANTED.**

6. The Plaintiffs' Motion to Strike Second Supplemental Declaration of Clare Bogle and Surrebuttal Response, **Ct. Rec. 417**, is **DENIED.**

7. The Plaintiffs' Motion For Final Clarification of Order Nunc Pro Tunc, **Ct. Rec. 181**, is **DENIED AS MOOT.**

8. The Defendant's Motion to Dismiss Plaintiffs' Negligent Misrepresentation Actions, **Ct. Rec. 361**, is **GRANTED.**

9. The Defendant's Refiled Motion for Summary Judgment on Counterclaim, **Ct. Rec. 354**, is **GRANTED IN PART** and **DENIED IN PART.**

ORDER GRANTING SUMMARY JUDGMENT IN PART- 25

10. Within fourteen (14) days of the entry of this order, the parties shall move to withdraw any and all pending motions that have become moot in light of the holdings in the present order.

11.  An order setting a scheduling conference will be forthcoming.

**IT IS SO ORDERED.**  The District Court Executive is hereby directed to enter this order and furnish copies to counsel.

**DATED** this  14th  day of May, 2008.


                    s/ Fred Van Sickle
                    Fred Van Sickle
         Senior United States District Judge

ORDER GRANTING SUMMARY JUDGMENT IN PART- 26