UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JOHN R. ATCHLEY, a married man,
and MICHAEL R. GILROY, a married
man,

              Plaintiffs,

          v.

PEPPERIDGE FARM, INC., a
Connecticut Corporation,

              Defendant.

No. CV-04-0452-FVS

ORDER

    **THIS MATTER** came before the Court on December 17, 2008, on

Plaintiffs' motions for summary judgment (Ct. Rec. 550) and to strike

the declaration of Kyle Jordan (Ct. Rec. 574).  John F. Bury

represents Plaintiffs.  David L. Broom, Gregory S. Johnson, Gregory C.

Hesler, Richard W. Kuhling, Jordan D. Weiss, Forrest A. Hainline, and

Elizabeth F. Stone represent Defendant.

    **BACKGROUND**

    This case is a consolidation of two matters brought

separately by Plaintiffs, John Atchley and Michael Gilroy, against

Pepperidge Farm, Inc. ("Defendant" or "PFI").  Plaintiffs owned and

operated PFI distributorships from 2003 until approximately January

2005.  As a result of the Court's rulings on summary judgment motions,

Plaintiffs' allegations against Defendant have been dismissed in their

entirety.  Defendant's counterclaim against Mr. Gilroy in his capacity

as guarantor of the loan that enabled Mr. Gilroy to purchase his

distributorship is the only issue remaining in this case.

ORDER - 1

1    The Court has determined that Mr. Gilroy is obligated to

2  reimburse Defendant for the deficiency, if any, owed under the

3  Security Agreement.  (Ct. Rec. 474 at 18-19).  Defendant alleges that

4  Mr. Gilroy defaulted on his loan payments, requiring Defendant to pay

5  $244,761.78 as guarantor.  However, the Court previously found that

6  genuine issues of material fact existed with respect to the commercial

7  reasonableness of the sale of the Gilroy distributorship.  (*Id*. at 19-

8  25).  The issue of commercial reasonableness of the sale of the Gilroy

9  route is now, again, before the Court.

10    Plaintiffs request that the Court dismiss Defendant's

11  counterclaim with prejudice and enter judgment in favor of Mr. Gilroy

12  and against Defendant in the amount of the surplus value of the Gilroy

13  Route ($346,554.00 minus $244,761.76).  (Ct. Rec. 550).  Defendant

14  filed a response in opposition to the motion for summary judgment and

15  requested that the Court sua sponte grant summary judgment in favor of

16  Defendant.  (Ct. Rec. 559).

17    **DISCUSSION**

18  **I.  Motion to Strike**

19    On December 1, 2008, Defendant filed the declaration of Kyle

20  Jordan in support of Defendant's opposition to Plaintiffs' motion for

21  summary judgment.  (Ct. Rec. 562).  Shortly thereafter, on December 8,

22  2008, Plaintiffs filed a motion to strike the declaration.  (Ct. Rec.

23  574).  Plaintiffs argue that the disclosure of Kyle Jordan was unduly

24  delayed or untimely and Mr. Jordan's declaration consists of

25  repetitive, cumulative sentences which lack probative value under Fed.

26  R. Evid. 403.  (Ct. Rec. 578).

ORDER - 2

## A.  Undue Delay

Plaintiffs first contend that Kyle Jordan's declaration should be stricken because Mr. Jordan was not disclosed in a timely fashion.  It appears Mr. Jordan was disclosed by Defendant on November 10, 2008, the date provided by the Court in its Amended Scheduling Order as the discovery cutoff deadline.  (*See,* Ct. Rec. 540).  While Plaintiffs were able to note Kyle Jordan for deposition on December 9, 2008, Plaintiffs' reply memorandum, filed December 12, 2008, claims prejudice because Mr. Jordan was not able to be deposed until a date after all replies and responses were due on "this Motion."  (Ct. Rec. 599 at 2).

On November 17, 2008, Plaintiffs requested to depose Mr. Jordan, and Defendant offered November 24, 25 or 26.  (Ct. Rec. 581). Plaintiffs declined those dates instead electing to depose Kyle Jordan on December 9, 2008.  *Id.*  Plaintiffs' reply regarding the pending motion for summary judgment was filed on December 8, 2008.  (Ct. Rec. 570).  Plaintiffs cannot now be heard to complain about a situation which they created.

Furthermore, as correctly asserted by Defendant, there is no demonstrated undue delay.  Defendant designated Kyle Jordan as a witness on November 10, 2008, and provided a summary of his expected testimony.  (Ct. Rec. 581).  The Court's amended scheduling order provided that all discovery shall be completed by November 10, 2008. (Ct. Rec. 540 ¶ 3).  Accordingly, Mr. Jordan was, in fact, disclosed during discovery.

///

ORDER - 3

1
2
3
4
5

Based on the foregoing, not only was the disclosure of Kyle Jordan within the time-frame established by the Court, but Plaintiffs have also not suffered prejudice as a result of Defendant's November 10, 2008 disclosure because Plaintiffs have had an opportunity to since depose Mr. Jordan.

6

**B. Duplication**

7
8
9
10
11
12
13
14
15
16
17

Plaintiffs next assert that Kyle Jordan's declaration should be stricken because "Paragraph Nos. 4, 5, 6, 7, 10, 11, 12, 17 (first sentence) and 18 of the Declaration of Kyle Jordan (Ct. Rec. 562) are duplications and verbatim duplications of the Supplemental Declaration of Chris Alan Baker, (Ct. Rec. 316)[1] Paragraph Nos. 4, 5, 6, 7, 8, 9, 11 and 12."  (Ct. Rec. 578).  Plaintiffs additionally assert that Paragraph Nos. 16 and 19 of Mr. Jordan's declaration repeat evidence from Mr. Sorich and/or Mr. Dollbaum that Mr. Gilroy's Route was sold in two parts and magnetic signs were used.  (Ct. Rec. 578). Plaintiffs argue this is a needless presentation of cumulative evidence and it should therefore be excluded.

18
19
20
21
22

Defendant responds that Plaintiffs fail to show how the similarity between portions of Mr. Jordan's and Mr. Baker's declarations substantially outweighs the probative value of the testimony.  Defendant claims, in fact, that the duplication and consistency is probative as it shows: (1) there is a recognized market

23

24
25
26

[1]Ct. Rec. 316 is a declaration of Chris Alan Baker filed on September 14, 2007.  Plaintiffs incorrectly cite this declaration as a duplicate of Kyle Jordan's declaration.  It is apparent that Plaintiffs actually contend that Mr. Jordan's declaration (Ct. Rec. 562) is duplicative of Mr. Baker's supplemental declaration filed on December 1, 2008 (Ct. Rec. 561).

ORDER - 4

for the sale of terminated Pepperidge Farm routes; (2) there is a recognized, usual and standard methodology for selling these routes; and (3) Mr. Gilroy's route was sold in conformity with this recognized, usual and standard methodology.

It appears Mr. Jordan's declaration is based on his own experience and personal knowledge.  While some paragraphs in the declaration duplicate statements in Mr. Baker's declaration, the Court finds the probative value of Mr. Jordan's declaration (explaining the commercial reasonableness of Defendant's marketing of Mr. Gilroy's former route for sale) outweighs any alleged prejudice caused by a duplication of the evidence.  Fed. R. Evid. 403.  Plaintiffs' December 8, 2008 motion to strike Mr. Jordan's declaration is without merit.

**II.  Motion for Summary Judgment**

**A.  Summary Judgment Standard**

A moving party is entitled to summary judgment when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273-74 (1986).  A material fact is one "that might affect the outcome of the suit under the governing law[.]"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  A fact may be considered disputed if the evidence is such that the fact-finder could find that the fact either existed or did not exist.  *Id.* at 249, 106 S.Ct. at 2511 ("all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury . . . to resolve the parties' differing

ORDER - 5

versions of the truth" (quoting *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288-89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968))).

The party moving for summary judgment bears the initial burden of identifying those portions of the record that demonstrate the absence of any issue of material fact. *T.W. Elec. Service, Inc. v. Pac. Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987). Only when this initial burden has been met does the burden of production shift to the nonmoving party. *Gill v. LDI*, 19 F.Supp.2d 1188, 1192 (W.D. Wash. 1998). Inferences drawn from facts are to be viewed in the light most favorable to the non-moving party, but that party must do more than show that there is some "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986).

**B.  Analysis**

Plaintiffs argue that Defendant's counterclaim should be dismissed on summary judgment because Defendant's sale of Mr. Gilroy's distributorship was commercially unreasonable as a matter of law. (Ct. Rec. 552).

A party who has taken a security interest in collateral may sell the collateral in the event of default. Wash. Rev. Code § 62A.9A-610(a). Every aspect of such a sale, "including the method, manner, time, place, and other terms, must be commercially reasonable." Wash. Rev. Code § 62A.9A-610(b). If a sale is not conducted in a commercially reasonable manner, the liability of the debtor will be reduced. Wash. Rev. Code § 62A.9A-626(3).

ORDER - 6

Prior to the enactment of Washington's current version of the Uniform Commercial Code ("UCC"), the creditor bore the burden of proving the commercial reasonableness of a sale. *Security State Bank v. Burk*, 100 Wash. App. 94, 101, 995 P.2d 1272, 1277 (2000) (internal citations omitted); *Rotta v. Early Indust. Corp.*, 47 Wash. App. 21, 24-25, 733 P.2d 576, 578 (1987).  Washington's UCC now provides that, when the amount of a deficiency is in issue, there is a rebuttable presumption that the secured party has complied with the UCC's requirements.  Wash. Rev. Code § 62A.9A-626(a)(1).  If the debtor "places the secured party's compliance in issue," the burden of proving compliance shifts to the secured party.  Wash. Rev. Code § 62A.9A-626(a)(2).  The UCC comments indicate that, in order to place commercial reasonableness "in issue," the opposing party need only "raise the issue (in accordance with the forum's rules of pleading and practice)."

As stated in this Court's May 14, 2008 order granting, in part, Defendant's motion for summary judgment, Mr. Gilroy placed Defendant's compliance with the commercial reasonableness requirement in issue, and, consequently, Defendant bears the burden of proving that the sale of Mr. Gilroy's distributorship was commercially reasonable.  (Ct. Rec. 474 at 20-21).  The Court concluded that Mr. Gilroy was obligated to reimburse Defendant for the deficiency, if any, owed under the Security Agreement.  (Ct. Rec. 474).  However, the Court also determined that genuine issues of material fact existed with respect to the commercial reasonableness of the sale of the Gilroy distributorship.  (*Id*. at 19-25).

ORDER - 7

A sale is commercially reasonable if made,

(1) In the usual manner on any recognized market;

(2) At the price current in any recognized market at the time of the disposition; or

(3) Otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition.

Wash. Rev. Code § 61A.9A-627(b).  In determining whether a sale was commercially reasonable, the Court should consider a number of factors:

1) Whether notice of the sale was provided "sufficiently in advance to allow interested bidders a reasonable opportunity to participate;"

2) Whether notice of the sale was provided to the segment of the public most likely to be interested;

3) Whether the notice contained enough information about the collateral to make an informed decision;

4) How widely the notice was published;

5) The relationship of the price obtained to the recognized market price;

6) "Conformity of the sale to commercially accepted standards;"

7) The presence or absence of a recognized market; and

8) "The overall reasonableness of means and methods of disposition under the circumstances."

*Rotta*, 47 Wash. App. at 25, 733 P.2d at 578.

Here, Plaintiffs contend that Defendant's sale of Mr. Gilroy's distributorship was unreasonable as a matter of law because Defendant's sale price of Mr. Gilroy's distributorship was less than fifty percent of its market value and Defendant made no reasonable effort to assure the best possible price in its sale.  (Ct. Rec. 552).

///

ORDER - 8

### 1. Price

As previously held by this Court (Ct. Rec. 474 at 22-23), and contrary to Plaintiffs' instant argument, the below market value price received for the sale of Mr. Gilroy's distributorship is not a fact dispositive of this issue.

In evaluating the commercial reasonableness of a sale, the mere fact that a higher price could have been obtained if the sale had occurred at a different time or using a different method is not dispositive.  Wash. Rev. Code § 62A.9A-627(a).  However, "a low price suggests that a court should scrutinize carefully all aspects of a disposition to ensure that each aspect was commercially reasonable." Wash. Rev. Code § 62A.9A-627 Comment 2.

Mr. Gilroy has demonstrated that the price for which the distributorship was eventually sold ($123,663.00 in 2006) is significantly lower than both the price paid by Mr. Gilroy ($299,950.00 in 2003) and the distributorship's fair market value ($346,554.00).  (Ct. Rec. 474 at 23).  Nevertheless, based on this discrepancy, the Court must evaluate the other aspects of the sale with heightened scrutiny.  Wash. Rev. Code § 62A.9A-627 Comment 2. The fact that a higher price could have been obtained if the sale had occurred at a different time or using a different method is not dispositive.  Wash. Rev. Code § 62A.9A-627(a).

As noted by Defendant, although Mr. Gilroy complains that the price received for his former route was too low, there is no evidence that there were other buyers who would have paid more for the route or that Defendant could find such a buyer, nor has Mr. Gilroy provided

ORDER - 9

evidence that the buyers of his former route would have or could have paid more.  Defendant additionally points out that Mr. Gilroy's route was an abandoned route, and, therefore, a distressed enterprise that logically would command a lower price in the marketplace.

In any event, as indicated above and previously by this Court, the fact that a higher price could have been obtained is not dispositive of this issue.

**2.  Reasonable Effort**

Plaintiffs also assert that Defendant made no reasonable effort to assure the best possible price was obtained for the sale of the distributorship.  (Ct. Rec. 552 at 8).

"The creditor is required to use its best efforts to sell the collateral for the highest price."  *Rotta*, 47 Wash. App. at 24, (quoting *Foster v. Knutson*, 84 Wash.2d 538, 549, 527 P.2d 1108 (1974)).  Consequently, Defendant was required to use its "best efforts" to obtain the highest price it could for the Gilroy distributorship.

As determined by this Court in its May 14, 2008 order granting Defendant's motion for summary judgment, in part, Plaintiffs raised a genuine issue of material fact concerning the adequacy of the notice of the sale.  (Ct. Rec. 474 at 24-25).  The Court found that Plaintiffs presented evidence which demonstrated that Defendant was aware that its advertising efforts were inadequate.  The Court based its finding primarily on Mr. Dollbaum's testimony that newspaper advertising of distributor routes is ineffective and a waste of money. (Ct. Rec. 474 at 24).  The Court indicated that reliance on

ORDER - 10

advertising methods that are thought to be of questionable value does not constitute commercially reasonable notice of a sale. (Ct. Rec. 474 at 24). The Court thus concluded that Mr. Gilroy raised genuine issues of material fact concerning the adequacy of the notice of the sale, and summary judgment on the issue of commercial reasonableness was inappropriate at that time. (Ct. Rec. 474 at 25).

Defendant now asserts that although Mr. Dollbaum's testimony indicates a belief that newspaper advertising should be eliminated due to a waste of money, this fact does not mean that Defendant should have substituted another method in its place. (Ct. Rec. 559 at 8). In fact, Defendant indicates that the purchaser of one portion of the Gilroy distributorship, Martin Petrilli, saw an advertisement for one of PFI's open houses in a Spokane newspaper. (Ct. Rec. 559 at 8).

Defendant argues that the documented efforts undertaken by Defendant, as a whole, demonstrate that the sale was commercially reasonable. (Ct. Rec. 559). Defendant asserts that it used the following customary advertising tools: word of mouth, written flyers, open house meetings, newspaper ads and magnetic signs on vehicles it used for the Gilroy route. (Ct. Rec. 559 at 5-6, 8-9). Defendant additionally posted information on its internal and external websites about routes for sale in November 2005 and, in 2006, used radio advertising in Seattle and Spokane. (Ct. Rec. 559 at 6, 9). As a result of print and radio advertising efforts, Defendant indicates it received fifty inquires. (Ct. Rec. 559 at 9).

The commercial reasonableness of a sale is a question of fact generally reserved for the trier of fact. *Burk*, 100 Wash. App. at

ORDER - 11

101, 995 P.2d at 1277 (internal citations omitted).  It is only appropriate for the court to rule upon such questions as a matter of law in "the clearest of cases."  *Id.*  "Even where the evidentiary facts are undisputed, if reasonable minds could draw different conclusions from those facts, then summary judgment is not proper."  *Id.* at 102 (citing *Chelan County Deputy Sheriffs' Ass'n v. County of Chelan*, 109 Wash.2d 282, 295, 745 P.2d 1 (1987)).

Although the price Defendant received for the Gilroy distributorship was low, that undisputed fact does not make the sale commercially unreasonable.  The Court is also not persuaded that there are no genuine issues of material fact with respect to the adequacy of efforts utilized by Defendant to sell the Gilroy distributorship.  Reasonable minds could draw different conclusions from the aforementioned facts.  Accordingly, the reasonableness of Defendant's efforts to sell the Gilroy distributorship should be presented to the fact-finder for disposition.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) ("all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury . . . to resolve the parties' differing versions of the truth").  Plaintiffs' motion for summary judgment (Ct. Rec. 550) is therefore denied.  Based on the same rationale and conclusions, Defendant's request that the Court sua sponte grant summary judgment in its favor (Ct. Rec. 559) is also denied.

///

///

ORDER - 12

1

        The Court being fully advised, **IT IS HEREBY ORDERED** as follows:

2

        1.    Plaintiffs' motion to strike the declaration of Kyle Jordan

3

(Ct. Rec. 574) is **DENIED.**

4

        2.    Plaintiffs' motion for summary judgment (**Ct. Rec. 550**) is

5

**DENIED.**

6

        3.    Defendant's request that the Court sua sponte grant summary

7

judgment in favor of Defendant (**Ct. Rec. 559**) is **DENIED.**

8

        **IT IS SO ORDERED.**   The District Court Executive is hereby

9

directed to enter this order and furnish copies to counsel.

10

        **DATED** this  _22nd_  day of December, 2008.

11

                              S/Fred Van Sickle

12

                              Fred Van Sickle
                              Senior United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER - 13